## WINFIELD TOWN COMPANY v. ENOCH MARIS, et al.

1. PLAINTIFFS; *Incapacity to Sue.* A demurrer to a petition on the ground that the plaintiff has not legal capacity to sue can only be sustained where the petition discloses some legal incapacity attaching to the plaintiff, such as infancy, lunacy, and the like.

2. OCCUPANTS OF TOWN SITES; *Act of Congress; Petition; Interest of Plaintiff.* The act of congress for "the relief of the inhabitants of cities and towns upon the public lands," (14 U. S. Statutes at Large, 541,) was intended for the benefit of those actually occupying the town site by settlement and improvement thereon; and if a person seeks in an action the benefit of the law, he must by suitable averments in his petition bring himself within its provisions; and if the petition does not show that the plaintiff has such an interest in the town site as makes him an occupant within the meaning of the law, a demurrer thereto should be sustained.

3. ———— Said act of congress was for the use of the inhabitants of such towns and cities as might grow up on government lands, and to secure to them severally at the minimum price all lands actually occupied by them, and to the same inhabitants the benefit of the sale of such other lands within the limits of the town or city as were not actually occupied.

4. RULES AND REGULATIONS *for Determining Rights of Beneficiaries; State Legislation.* The rules and regulations for the determination of the respective rights of the several inhabitants of such towns and cities is left to the legislature of the state where such town or city may be; and while much discretion as to detail is left to the legislature, still these rules and regulations must be such as will carry out the trust, not defeat or destroy it, or pervert it from its proper uses. The act of congress creates the right, and prescribes who shall be entitled thereto. The legislature provides the rules by which the rights are ascertained and determined.

5. ———— So far as section 12 of chapter 109 of the General Statutes undertakes to dispose of the trust otherwise than as is prescribed by the act of congress, it is inoperative and void.

### *Error from Cowley District Court.*

THE petition filed in the district court was entitled as follows: "Enoch Maris, A. A. Jackson, and C. H. Kingsbury, who sue for the benefit of all the occupants of the town site of Winfield, plaintiffs, against The Winfield Town Company, The Winfield Town Association, and T. B. Ross, probate judge in and for Cowley county, defendants." The body of the petition is as follows:

"The plaintiffs say, that for a long time prior to the 10th of July 1871, the W.½ of the N.E.¼, and the E.½ of the N.W.¼ of sec. 28, township 32 south, of range 4 east, situate in said county, was settled upon and occupied as a town site, the same being public lands of the United States; that the plaintiffs and very numerous other parties were then and still are inhabitants of said town of Winfield, and occupants of said town site; that on said 10th of July 1871 said town site was duly entered at the United States Land Office in Augusta, Kansas, by T. B. Ross, as probate judge in and for Cowley county, in trust for the several use and benefit of the occupants thereof, under the provisions of the act of congress approved March 2, 1867, entitled 'An act for the relief of inhabitants of cities and towns upon the public lands.' The plaintiffs further say, that the said Winfield Town Association is a corporation organized under the laws of Kansas, whereof E. C. Manning is president, and D. A. Millington is secretary; and that the Winfield Town Company is a like corporation, whereof J. C. Fuller is president, and E. C. Manning is secretary; and that the principal office of each of said companies is at Winfield in said county and state; that on the 10th of July 1871 the said Ross, probate judge, in violation of the trust reposed in him by law, in utter disregard of the rights of the occupants of said town site, and for the purpose of defrauding the inhabitants of said town of Winfield out of their just rights, made, executed, acknowledged and delivered to the said Winfield Town Company a deed for the said N.E.¼ of N.W.¼ of section 28, and the said Winfield Town Company through its officers as aforesaid have ever since claimed to be the owner of said tract of land, the same being a portion of said town site first above described; and on the said 10th of July the said Ross, probate judge, in like manner executed and delivered to the said Winfield Town Association a like deed for the aforesaid S.E.¼ of N.W¼, and W.½ of N.E.¼ of said section 28, the same being the remainder of said town site above described: and the said Winfield Town Association has ever since, through its officers aforesaid, claimed to be the owner of all that portion of said town site of Winfield, and the lots embraced therein. The plaintiffs further say that the only consideration for said first-mentioned deed was the sum of $50, paid by J. C. Fuller and E. C. Manning, the president and secretary of said Winfield Town Company to the said Ross, probate judge, etc.; and that the only consideration for said last-mentioned

conveyance was $150, paid by E. C. Manning and D. A. Millington, president and secretary of said Winfield Town Association to said Ross, probate judge as aforesaid. The plaintiffs further state that each of said conveyances was made without their consent, and against the expressed wish of the occupants of said town site, which the said Ross well knew at the time; and that by collusion between the said Ross, Manning, Millington and Fuller, said conveyances were made for the purpose of preventing the plaintiffs; together with all the other inhabitants of said town — the actual occupants of said town site — from obtaining the legal title to their respective interests in said town site in the manner prescribed by law, and for the further purpose of enabling the said Town Companies to extort from the inhabitants of said town a large amount of money, to-wit, about the sum of seventy thousand dollars.

"And the plaintiffs further state that afterward, to-wit, on the 4th of August 1871, the said Ross, probate judge, under compulsory process and in obedience to the command of a writ of mandamus issued by the judge of the eleventh judicial district, did appoint H. C. Loomis, W. W. Andrews and L. M. Kennedy, of said county of Cowley, as commissioners to survey said town site, and set off to the occupants thereof their respective interests in the manner prescribed by the rules and regulations adopted by the legislature for the execution of the trust arising out of the entry of said town site by the probate judge of said county as aforesaid; but in the appointment of said commissioners the said Ross did not act impartially, but on the contrary appointed said commissioners at the suggestion and dictation of said Manning, Millington and Fuller, and instructed said commissioners not to recognize the rights of the plaintiffs in the premises, but to proceed and set off the said town site to the said Town Companies. The plaintiffs further show that said Loomis, Andrews and Kennedy were each of them improper persons to be appointed on said commission; that said commissioners, acting under the direction of said Millington, Manning and Fuller gave notice that they would meet at Winfield on the 20th of September 1871, to set off to each of the occupants their respective interests; that said commissioners met at the time and place appointed, but that each and all of them wholly refused to recognize the rights of the inhabitants of said town of Winfield in and to said town site; refused to receive, entertain or decide upon any claim of any occupant for his

interest in said town site after being requested so to do, but on the contrary declared and said, that the whole of said town site belonged to the two several Town Companies before mentioned, and their assigns, and that the inhabitants of said town of Winfield had no interests in said town site except such as had been purchased from said Town Companies; and on said 20th of September said commissioners made a pretended report to the said probate judge in and by which they awarded to the said Winfield Town Company and the said Winfield Town Association, and their assigns, all of said town site. And the plaintiffs further show that on said 20th of September the said Ross executed, acknowledged and delivered to the said Winfield Town Company and the said Winfield Town Association, deeds of conveyance for all the lots embraced in said town site except such lots as had previously been assigned by said Town Company and Town Association to others. And plaintiffs further state that all of said proceedings on the part of said trustee and the said commissioners were conducted in a fraudulent manner, and for the purpose of defrauding the plaintiffs, together with all the other inhabitants of said town, out of their respective interests in said town site, or a portion thereof, and transferring the legal title to the largest portion of said town site to said Town Company and said Town Association, the principal members of which said companies are not and never have been occupants of lots in said town site and have no legal or equitable interest therein.

"The plaintiffs therefore pray judgment against said defendants, that said deeds of conveyance may be adjudged to be fraudulent and void, and be wholly vacated and set aside and held for naught; and that the said Winfield Town Company and the said Winfield Town Association be ordered to release to the said probate judge of Cowley county in trust for the use and benefit of the inhabitants of the town of Winfield all their title, claim and interest in and to the said premises, or color of title thereto, which they may have acquired by or through said deeds of conveyance, or any of them, and that in default thereof that the order or decree of this court shall operate as such release; and that plaintiffs have such other and further relief as equity and good conscience may require in the premises."

The defendants appeared and demurred to said petition, and assigned the following causes of demurrer: "1st.—The

plaintiffs have no legal capacity to sue in this case 'for the benefit of the inhabitants and occupants of the said town,' or for any other purpose.     2d.–There is a defect of parties plaintiff.     3d.–There is a defect of parties defendant. 4th.–The said petition does not state facts sufficient to constitute a cause of action against the defendants, or any or either of them." At the March Term 1872, on motion of plaintiff. A. A. Jackson, the action was discontinued, as to him, and at his costs.     And at said March Term said cause was tried, and said demurrer was overruled.     Judgment was entered as follows:

[TITLE.]   "Now at this day this cause came on to be heard upon the demurrer to the petition, and was argued by counsel; and the court being fully advised in the premises doth overrule said demurrer — to which ruling and decision the said defendants except.   And thereupon, on motion of plaintiffs, it is ordered, adjudged and decreed by the court, that the deeds of conveyance made by T. B. Ross, probate judge, to the defendants, [specifying the four deeds mentioned in the petition,] and that the order of the defendant Ross, probate judge, dated August 4th 1871, appointing commissioners to survey the town site of Winfield, and set off to the occupants thereof their respective interests in the same, together with all the acts, proceedings, and report of said commissioners, so far as the same affect the conveyances hereinbefore mentioned, be declared null and void and of no effect.   And the legal title to all the land embraced within said town site is hereby declared and adjudged to be vested in the probate judge of said county, as trustee for the occupants thereof, as fully and completely as the same was before either of said conveyances was made, or any proceedings had in the premises by said Ross, probate judge, after the entry of said town site."

From this judgment the defendants appeal, and bring the case here by petition in error.

*W. C. Webb*, and *Leland J. Webb*, for plaintiffs in error:

1. The plaintiffs below have no legal capacity to sue. Maris and Kingsbury (with whom originally was Jackson,) are the only plaintiffs.   The words in the *title* of the action,

"who sue for the benefit of all the occupants of the town site of Winfield," are mere surplusage. They perform no office whatever, and are to be wholly disregarded. In all cases where a few persons can sue for the benefit of many, the petition (in the body) must allege and show that the case is such as is contemplated by § 38 of the code. The "common interest" contemplated by said § 38, its nature and character, must appear (from the facts stated in the petition,) to be such as would entitle all persons interested, if all were before the court, to maintain the action in their own names. *Habicht v. Pemberton*, 4 Sandf., 657. The petition in this case does not state nor show "that the question is one of common or general interest;" nor that the parties interested "are very numerous;" nor that "it is impracticable to bring them all before the court." · No averment in the petition shows that Maris and Kingsbury had any right or authority to sue for others than themselves; or that others had interests in common with theirs. For aught that appears by the petition, Maris and Kingsbury are merely officious intermeddlers. The allegations that the defendants were trying to "defraud the plaintiffs and all other inhabitants," do not show any "common" or "general" interest. (See cases of *Newcomb v. Horton*, 18 Wis., 566, and *Barnes v. City of Beloit*, 19 Wis., 93. In this case then, the plaintiffs are Maris and Kingsbury, and no others; yet they demand, and the court decrees, that the deeds "be wholly vacated, and set aside and held for naught"—while the utmost that they could properly ask, and that the court could decree, is, that the deeds be annulled and set aside as to *Maris* and *Kingsbury*. Certainly all the occupants of lots in Winfield, *not named* in the record, and whose interests, whether joint or several, are not shown to the court, will not be presumed to join with Maris and Kingsbury, from the mere addenda to the *title* of the petition. Each occupant may have had an interest similar in nature to that of Maris; some of them may have had paramount adverse interests, also; others may have parted with or extinguished their interests by deed or release; so that at

.the time this suit was commenced, a majority of the occupants. may be interested, each for himself, in having the deeds to the town companies remain undisturbed—and the plaintiffs, Maris and Kingsbury, had "no legal capacity to sue" for any persons except themselves. Nor can they even maintain a joint action, if their interests are several only, and not joint —a point on which the petition is silent.

2. There is a defect of parties plaintiff. The petition alleges that there were "numerous other parties, besides the plaintiffs," who were "inhabitants and occupants," etc.; and that the defendants were trying to defraud "the plaintiffs, together with all the other inhabitants," etc. If these averments mean anything, and the court shall conclude that the petition shows that Maris and Kingsbury have a joint, and not a several interest, then the words above quoted must be construed as stating that the two plaintiffs named, and all the other inhabitants of Winfield are "joint tenants," having a unity of interest, title, time and possession—and hence all should be joined as plaintiffs; and, there being no averment or statement showing that such other persons are "very numerous," and that "it is impracticable to bring them all .before the court," it follows that they should all be mentioned by name in the petition. If, however, the interests of the plaintiffs and "the other parties" are *several*, if their interests are separate and distinct, then there is a misjoinder of the two parties plaintiff, and the plaintiffs have not, nor has either of them, any legal capacity to sue for those "others."

3. There is a defect of parties defendant. Section 37 of the code provides that, "Of the parties to the action, those who are united in interest must be joined, as plaintiffs or defendants; but if the consent of one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason being stated in the petition." Such "other parties" are not joined as plaintiffs, by name, nor by proper averment. If the court finds that such parties and the plaintiffs named are "united in interest," it follows that they should be joined as defendants, "the reason being stated

in the petition." It cannot be possible that there is a "common or general interest" between the two plaintiffs named, and the "other inhabitants," unless there is a defect of parties plaintiff, or defect of parties defendant. Was *Jackson* a necessary party plaintiff when this suit was brought? If so, it was because he was "united in interest" with Maris and Kingsbury; and when he withdrew as *plaintiff* the petition should have been amended so as to join him as a party *defendant;* and *this defect* was apparent at the time of the trial.

4. The petition does not state facts sufficient to constitute a cause of action. Maris and Kingsbury seek to set aside and annul four certain deeds of conveyance. What interest in the premises do they set up or claim, as entitling them to be heard? Simply this: that they (and very numerous other parties,) on the 10th of July 1871, were and still are "inhabitants of the town of Winfield, and occupants of said town site." Does this fact confer any right whatever? Not the least. The petition says that *long before* said 10th of July, said lands were "settled upon and occupied as a town site." *By whom,* is not stated. If by the *plaintiffs*, the fact would be averred. On the 10th of July 1871 said lands "were duly entered by the probate judge in trust for the use and benefit of the occupants." What occupants? Those who happened to be there, without regard to the nature and character of their occupancy or tenancy? No. The entry was for the use and benefit of those who first settled upon and occupied the lands as a town site, and laid it out into lots and blocks, streets and alleys, etc., and for their assigns. (*Leech v. Rauch*, 3 Minn., 448.) Who were the parties who first settled upon and occupied the lands as a town site? The Winfield Town Company, and the Winfield Town Association. The petition shows that said companies, by their proper officers paid the entry or purchase-money for the whole of such town site; and there is no averment or pretense that Maris and Kingsbury, or any other person, ever repaid or

offered to pay to any one any part of the money so paid by plaintiffs in error.

The plaintiffs below assert two propositions — first, that all persons who are actually occupying any portion of the town site at the date of entry by the probate judge, are "occupants" within the meaning of the act of congress, and constitute the *cestuis que trust* — and this, without regard to the time, manner, or circumstances, when and under which their "occupancy" commenced; second, that a "town company" cannot enter upon and become the "occupant" of a town site. The first position is not sound.  The "occupants" contemplated by the act of congress are those persons who, whether by design or accident, are in good faith in possession of the town site, or some part thereof, having the same legal and equitable right thereto, each claiming for himself, and being neither a trespasser nor tenant.  And the rights of such occupants become fixed and vested, and exclusive as against all the rest of the world, whenever they perform the conditions necessary to bring the lands within the provisions of the act of congress.  These conditions vary according to the circumstances of each case.  In the case at bar, the person or persons, whether one or a dozen, whether natural or artificial, who, finding the land wholly unoccupied and unclaimed by any one save the government, settled upon such land as a town site, surveyed it into lots, blocks, streets, etc., as and for a town, and improved it accordingly, became then and that time entitled to the whole tract of land, and to have the same entered for the exclusive benefit of themselves and their assigns, whether the entry be in fact made the same day, or same week, or not until the lapse of months and years. (See opinion of the court in *Castner v. Gunther*, 6 Minn., 135; and *Ricks v. Reed*, 19 Cal., 574.)  As to the nature and character of the settlement and occupancy required under the *municipal pre-emption laws*, as distinguished from that required under the *agricultural pre-emption laws*, see opinion of the court in *Leech v. Rauch*, 3 Minn., 448.

Surveying, staking and platting into blocks, lots, streets,

etc., constitutes actual occupancy, and is notice to all: *Robinson v. Imp. Silver Mining Co.*, 5 Nevada, 44, 71. All this can be done as well by a "town company" as by a natural person or persons. Congress did not intend to give the benefits of the entry to mere temporary occupants of particular tracts (or lots) at the date of the entry, without reference to the character of the occupancy, thereby depriving the original *bona fide* settlers of their premises and improvements in favor of those who had by force or otherwise intruded upon their settlement. (*In re Selby—Cash & Spaulding, Appellants*, 6 Mich., 193.) Persons claiming under the first settler, or claimant, (whether individual, or a town company,) are entitled to the land. (*Foster v. Bailley*, 1 Minn., 437; *Weisberger v. Tenney*, 8 Minn., 456.)

The position that a "town company" has no rights as such, and cannot be an occupant, is not sound. Sec. 5 of ch. 23, Gen. Stat. of Kansas, (clause 14,) page 191, expressly provides that one of the "purposes for which private corporations may be formed," is—"The purchase, location, and laying out of town sites, and the sale and conveyance of the same in lots and subdivisions, or otherwise." And § 12 of the townsite act, ch. 109, Gen. Stat., p. 1075, (re-enacted by ch. 123, 1870,) provides that—

"All persons who select and lay out a town site, and their assigns, shall be deemed occupants of said town site, and the lots embraced therein, within the meaning of the above recited act of congress, and deeds shall be made accordingly."

It is claimed that these provisions, and especially said § 12, so far as it is held to include town companies, are invalid. Many of the states have enacted a law or rule, similar to § 12 aforesaid: Laws of Minnesota, 1855, p. 29, ch. 7; Nebraska Rev. Stat., 384, ch. 53; Arizona Comp. Laws, p. 584, ch. 89; Dakota, 1862, p. 481, ch. 87; California, 1856, (19 Cal. Rep., p. 657;) Nevada, 1866, p. 55, ch. 12, §§ 4, 8, 12; Wisconsin, R. S. 1858, ch. 47, p. 386. In *Leech v. Rauch*, 3 Minn., 448, the rights of the "Mankato Town Company," to settle upon, occupy and enter the town site, is expressly recognized.

10—11 KAS.

That a town company may be incorporated for the *purpose* of settling, occupying, and laying out a town site, will not be seriously controverted. Such company is in law, a *person.* For municipal purposes — for purposes of trade and commerce — it may go in advance of other settlers and take possession of lands, survey· and plat them, erect buildings, and invite other persons·to move in, and commence trade, etc., and contract with such other persons for the sale and purchase of any lots, parcels, or subdivisions of the town site, before the entry of the lands. Will this court assert that these latter persons, thus "locating" in the "town," are "occupants," and entitled to an interest as original occupants upon the entry of the town site? Certainly not; and much less are those persons who come in as *mere trespassers*, and take possession of such lots as they find vacant, entitled to be recognized as "occupants," within the meaning of· the act of congress. The act of congress of March 2, 1867, under which the lands in question were entered, prescribes that the "entry," in cases like the present one, should be made by the probate judge. The petition says the "entry was duly made." Said act also provides that the execution of the trust shall "be conducted under such rules and regulations as may be prescribed by the legislative authority of the state." Our ch. 109, Gen. Stat. 1868, contains the rules prescribed by the legislature of Kansas. (Enacted originally Feb. 12, 1858: Laws of 1858, p. 399. Comp. Laws 1862, p. 889. Sec. 3 of that act is the same as §12 of existing law.) This law has existed for fourteen years, and the state of Kansas is covered with towns and cities whose original "town sites" were selected, settled upon, and purchased by town companies. The doctrine contended for by plaintiffs below is rank *agrarianism.* It has no more foundation or support in law or in equity than would the act of going upon and taking possession of a lot or lots now vacant in Topeka, Lawrence or Leavenworth, whether such lots are owned or claimed by the original proprietor, or any assignee or grantee of such original proprietor.

Maris and Kingsbury do not show that they have any right to any specific parcel or subdivision of the town site. No lot or block is designated or described. The number of occupants or inhabitants *at any time* is nowhere stated. The "respective interests" of M. and K. are not stated, n or can they be determined from the petition. If they were stated, (and it should appear that they were "joint tenants," so that there was no misjoinder of causes of action,) there w ould be some plausibility (but nothing more) in their demand that the deeds to plaintiffs in error should be canceled *as to them.* As it is, their claims cannot be maintained at all, under the showing made in their petition.

5. It is claimed as against the right of a town company to be recognized as the "occupant" for whose use the town site is entered, that the act of March 2, 1867, (2 Lester, pp. 207–8,) requires that there shall be "at least one hundred inhabitants" on a town site before an entry can be made. The law bears no such construction. When the "occupants" are *less* than one hundred, whether there be only one occupant or a dozen, the entry may be made of any quantity of land actually occupied, not exceeding 240 acres, according to legal subdivisions. From one hundred to two hundred inhabitants, the entry may include 320 acres, etc. The lowest legal subdivision, established by act of April 24, 1820, was 80 acres. The proper construction of the act of March 2, 1867, is, that when more than three 80's (240 acres,) are claimed, there must be proof made that the number of occupants is one hundred or more.

It may be claimed that the question of the right of town companies to settle upon and occupy town sites has been determined, and settled against such right. Secretary Thompson's and Attorney General Cushing's opinions, (Lester's Land Laws,) are quoted to that effect. Such opinions are not authorities, binding on any court. Besides, those opinions were made upon the act of May 23, 1844, (1 Lester, p. 92,) and were grounded upon the use of the word "citizens" in the *title* of the act. The "title" of an act is no part of the

law; and the word "citizens" is not in the body of the act. Besides this, said act was repealed in 1864, and the act under which the entry in question was made, was passed March 2, 1867, (2 Lester, 207,) and the word "*citizen*" is dropped, and "*inhabitants*" used instead—showing, (if the title means anything,) that the narrow and technical construction given to the act of 1844 was contrary to the intent of congress.

The entry is to be made for the use of the "occupants." The Minnesota cases show that a town company may settle upon, occupy, and hold the land for purposes of trade and commerce; and our law, (§ 12, ch. 109,) declares that the persons, (natural or artificial,) who "select and lay out a town site," shall be deemed the *occupant* within the meaning of the act of congress. Of course, no town company, or other person, would be permitted to trespass upon lands already occupied by others, and oust them from possession. The courts would prevent that. But when the land is vacant, they may select, occupy, and lay out a town site, and cause the same to be entered for their benefit. That a corporation is *a person, inhabiting* and belonging to the state where created, and to be deemed *a citizen of such state*, is expressly decided by the supreme court of the United States in *Louisville Rld. Co. v. Letson*, 2 Howard, 555—cited in 2 Lester, 336, in opinion of Commissioner of General Land Office, sustaining the claim of corporations to be treated as citizens in all applications for mining patents. If corporations can acquire lands for mining purposes, they certainly can for town sites. (See also, opinion of Com'r Hendricks, in the Portland City case, 1 Lester, pp. 440, 441. And see case of *Stark v. Starrs*, 6 Wallace, 409, as containing several propositions pertinent to the questions of settlement and occupancy.)

The 12th section of our statute is to receive such construction as will be proper in the particular case in hand. When natural persons are the original occupants, they are the *cestuis que trust;* when town companies are the original, and they and their assigns the only occupants, they are the *cestuis que trust.* The plaintiffs below show no legal or equitable title

in themselves to any part or portion, either *undivided,* or in *severalty,* of the lands in question. If they have such interest, it must be of such value, or nature, as courts will take notice of, when presented, and protect; and no value or substantial right is shown. If they seek equity they must do equity; and they must assert a substantial interest, and offer to pay a proper proportion of the entry money and expenses. Nothing of the kind appears in the petition. As in actions of ejectment, they must recover, if at all, upon the strength of their own title—that is, they must show such rights and equities of their own, as entitles them to relief. They cannot succeed upon actual or supposed defects in the rights or title of plaintiffs in error.

*Amos Sanford,* for defendants in error:

1. Section 37 of the code requires "those who are united in interest" to be joined as plaintiffs or defendants, and embodies the general equity rule as to parties. Sec. 38 provides for the exception and declares that, "when the question is one of common or general interest of many persons, one or more may sue or defend for the benefit of all." The same special rule is provided by this section, "when the parties are very numerous, and it may be impracticable to bring them all before the court." The record shows that the plaintiffs below "sue for the benefit of all the occupants of the town site of Winfield." This statement following the names of the parties plaintiff, is a part of the petition. (See § 87, code.) The petition shows that the plaintiffs below were "inhabitants" and "occupants" of the town site of Winfield, and therefore proper persons to bring the action. The question arising in this case is one of "common or general interest" to "all the occupants of the town site of Winfield," and the nature of their common interest appears by the petition, wherein the allegation is made that the parties are "very numerous." It certainly was impracticable to bring all the inhabitants of Winfield, one of the populous county-towns

of this state, before the court.   See 10 Indiana, 174; Swan's Pl., 90 to 96.

2. The second and third assignments of error by plaintiffs in error cannot be maintained.   A defect of parties is a want of parties necessary to the action.   If the real parties plaintiff in the court below were all the occupants — represented by Maris and Kingsbury — the court did not err in deciding that there was no defect of parties plaintiff.

3. Does the petition state facts sufficient to constitute a cause of action?   "No defects of form or indefiniteness or duplicity, or irrelevant matter, or omissions, are fatal to a petition on demurrer, if, taking all the facts to be admitted as stated, they furnish any cause of action whatever."   Swan's Pl., 238.

The real inquiry in this case is, whether the defendants in error were entitled to any relief whatever against the plaintiffs in error upon the facts stated.   To determine this properly it is necessary to examine the entire petition, the several acts of congress, and of the legislature of Kansas, relating to town sites on the public lands of the United States.   Primarily the state has no power to "dispose of" the public lands of the United States.   That power is vested exclusively in congress.   (Sec. 4, art. 4, U. S. Const.)   The pre-emption act of September 4th, 1841, authorized persons to settle upon the public lands for agricultural purposes only.   "An act for the relief of the citizens of towns upon the lands of the United States, under certain circumstances," approved May 23d, 1844, was the first law of congress, (1 Lester's Land Laws, 92,) which authorized any portion of the public lands to be settled upon and occupied as a town site.   This law remained in force until it was repealed by § 5 of an act of congress, approved July 1st, 1864, entitled, "An act for the disposal of coal lands and of town property in the public domain."   (2 Lester's Land Laws, 120; 13 Stat. at Large, 343.)   The repeal of the law of 1844, by congress, in 1864, annulled and rendered nugatory the act of the Kansas legislature, approved February 12th, 1858, entitled, "An

act to regulate the entries and disposal of town sites." Comp. Laws, 889.) The second section of the act of congress of 1864, before mentioned, after prescribing the manner of the disposal of lots in cities and towns on the public lands, concluded with the following proviso:

"*Provided*, That any actual settler upon any one lot, as aforesaid, and upon any additional lot in which he may have substantial improvements, shall be entitled to prove up and purchase the same as a pre-emption, at said minimum, (ten dollars per lot,) at any time before the day fixed for the public sale."

This protected the actual setters. Their right to purchase the lots upon which they resided and had substantial improvements, within the limitation, was an exclusive right, and predominated over every other claim. Without repeating the law of 1864 congress passed an act approved March 2, 1867, entitled "An act for the relief of the inhabitants of cities and towns upon the public lands," (2 Lester's Land Laws, 207; 14 Stat. at Large, 541;) under the provisions of which the entry in this case was "duly" made as shown by the petition. The act of congress, approved June 4th, 1868, (2 Lester's Land Laws, 216,) authorizes the inhabitants of cities and towns on public lands to elect whether they will proceed to obtain titles under the law of 1864 or that of 1867. An act of congress approved March 3, 1871, (16 Stat. at Large, 557,) extends the law of 1867 over the Osage Indian Lands, upon which the Winfield town site is situated. The title of the act of congress of 1867 would seem to indicate that the law was passed for the benefit, or "relief of the inhabitants of cities and towns upon the public lands." Webster defines the word inhabitant to be, "a dweller; one who dwells or resides permanently in a place, or who has a fixed residence, as distinguished from an occasional lodger or visitor." The text shows clearly that no person residing without the limits of any such town or city, is entitled to any benefits thereunder. It provides:

"That whenever any portion of the public lands of the United States have been or shall be settled upon and occupied

as a town site, and therefore not subject to entry under the agricultural pre-emption laws, it shall be lawful  *   *   *   * for the judge of the county court for the county in which such town may be situated, to enter at the proper land-office, and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legis-lative authority of the state or territory in which the same may be situated."

It will be readily seen, that it is only such public lands as have been *settled upon and occupied* as a town site, that are subject to entry under this law. Simply to "select" and "lay out" a town site is not sufficient. There must be inhab-itants and occupants. It requires actual settlers to constitute a town on the public lands, to the number of at least one hundred, as provided by another clause of this act. In this state the probate judge is the trustee. Who are the bene-ficiaries? The occupants. *Who are occupants?* They that occupy or take possession; *actual* possession; such as will constitute them *inhabitants* of the town. The law is pros-pective in its nature. The words "or shall be," fully authorize pioneers to settle upon, and occupy any portion of the public lands for town-site purposes, without paying tribute to any person or corporation. The probate judge makes the entry. The naked legal title passes from the United States to him, in conformity with this law of congress. The occupants are the equitable owners. The trustee holds the legal title for their use and benefit, not for the use and benefit of town companies. How shall he execute the trust? The law answers—"under such rules and regulations as may be prescribed by the legislative authority of the state." What power has the legislature upon this subject? Simply to pre-scribe the rules for executing the trust—nothing more. It has no power to destroy or divert it—no power to declare him to be an *occupant* who is not an *inhabitant*.

Sections 3 to 11 of the "Act relating to town sites," approved March 2, 1868, (Gen. Stat. 1074,) contain the only rules which have been prescribed by our legislature since March 2, 1867, applicable to the case now under consideration. Section 3 recognizes the doctrine that entries by the probate judge are made "for the use of the inhabitants," and directs the trustee "to convey the same to the occupants and inhabitants. Section 4 makes it the duty of the trustee to appoint three commissioners "who shall not be residents of such town, or the owners of any interest therein," to survey the site and make out a plat, etc. Sections 5 and 6 require the commissioners, after publication of notice, to "proceed to set off to the persons entitled to the same the lots, squares and grounds, to which each of the occupants thereof shall be entitled." Section 7 authorizes the levy of a tax to reimburse the parties who may have furnished the probate judge the necessary funds to procure the entry of the town site, and to pay the expenses of survey, etc. Sections 8 to 11 provide for the return of the commissioners, and authorize the probate judge to collect the taxes, and execute deeds in severalty to the inhabitants for whose use the land was originally entered. These "rules and regulations" are all in harmony with the act of congress which authorized their adoption. It is the duty of the trustee to execute his trust, faithfully and impartially, in accordance therewith, and it is the peculiar province of a court of equity to compel him to do so in case he proves refractory. A wrongful sale by him does not conclude the *cestuis que trust*, (4 Kent, 553, note,) even if the act of congress creating the trust did did not declare positively "That any act of said trustee not made in conformity to the rules and regulations herein alluded to, shall be void." See, also, Gen. Stat., 1097.

In the light of these statutes, and the admitted facts in this case, the district court committed no error. The demurrer was properly overruled, and a righteous judgment given, which ought to be confirmed in this court. Suppose there are technical errors in this record, (which I by no means admit,)

what "substantial rights" of the plaintiffs in error are affected by it? The decree does not affect Ross. He certainly has no grounds for complaint. The other two plaintiffs in error have no shadow of right to the town site of Winfield. All the cases which have been determined in the Interior Department of the government under the law of 1844 (similar to the act of 1867,) are to the same effect. (1 Lester's Land Laws, 430–437.) There is no law that authorizes "town companies" to acquire title to the public lands, or any portion thereof, for any purpose whatever.

In rendering the opinion in the Ontonagon town-site case in the supreme court of Michigan, (quoted in 1 Lester, 736,) the court say: "The language of the act of 1844 is confined to lands actually settled and occupied. It has no reference to 'selected' lands, unless the selection is included in other language. The words 'settle' and 'occupy' do not first occur in this act—they are to be found in all the pre-emption laws. (See Brightley's Digest, 469, where the various acts are collected.) They are inapplicable to any other state of things than a *bona fide* use and improvement of the land. The term 'occupants,' which embraces nearly all of a class, cannot be confined to mean a small number, or an individual who may not be an occupant, in fact, at all." The 12th section of the Kansas Town-Site act will not bear the test of such reasoning, but it is unnecessary to consider that here, as there is nothing upon this record to show that the plaintiffs in error, or either of them, ever "selected" the town site of Winfield.

The opinion of the court was delivered by

KINGMAN, C. J.: This action was brought by defendants in error and A. A. Jackson in behalf of themselves and all others, occupants of the town site of Winfield, to vacate certain deeds made by the probate judge of Cowley county to the Winfield Town Company and the Winfield Town Association. The questions made arise on a demurrer which was overruled. The demurrer was not tenable on the first ground

1. Plaintiff's in-
capacity to
sue. Defect
of parties
plaintiff and
defendant.

alleged in it, that the plaintiff had no legal capacity to sue, for that ground only goes where there is a legal incapacity, such as infancy, coverture, lunacy, and the like. The pleader seemed aware of this difficulty, for he has extended his demurrer on this ground by adding that they "have no power to sue in this action for the benefit of the inhabitants and occupants of the said town." This may be true. We think it is, as we shall presently set forth more fully; but the objection can only be taken on the ground that the petition does not state facts sufficient to constitute a cause of action.

The next ground of demurrer is that there is a defect of parties plaintiff. This also is a mistake. That there is a misjoinder of parties we have little doubt; but this defect is not one for which a demurrer on this ground will lie. See code, §89; *Mann v. Marsh*, 35 Barb., 68. Nor can we perceive that there was a defect of parties defendant. We have noticed these points briefly as they are insisted on by the plaintiffs in error. They have not been reasoned, because the questions have long been settled.

The next ground of demurrer is, that the petition does not state facts sufficient to constitute a cause of action. And on this ground we think the demurrer should have been sustained.

2. Petition of
occupant of
town site, for
relief. What
it should state.

The petition states that the plaintiffs and many other parties, on the 10th of July 1871, the day on which the town site of Winfield was entered, were and still are inhabitants and occupants of said town site, and they seek to have four certain deeds relating to the lots in the town of Winfield set aside. They allege that on the 10th of July 1871 the town site was duly entered by the probate judge of Cowley county in trust for the use and benefit of the occupants; that on the same day he fraudulently executed a deed for forty acres of the land to the Winfield Town Company, and at the same time he fraudulently executed another deed for 120 acres of the town site to the Winfield Town Association; that each of said deeds was made against the interests and expressed wishes of the

occupants of said town site, and in violation of the trust; that these conveyances were made by collusion between the probate judge and the officers of the two corporations named; and that when the inhabitants of the town obtained a mandamus compelling the probate judge to appoint commissioners to set off to them their respective interests, he appointed interested men who entered into a conspiracy with the officers of the above-named corporations to defeat the claim of the occupants, and fraudulently made a report to the probate judge in favor of those two corporations, refusing to recognize the rights of the occupants in their report, and immediately upon the making of the return by the commissioners the probate judge executed to said corporations two deeds similar to those previously made. These are the four deeds which the petition seeks to have declared void; and it is further asked that the order of the probate judge appointing commissioners, and the report of the commissioners so far as they affect the conveyances, be declared null and void. From this statement of the petition it does not appear that the plaintiffs had any joint interest in the suit. If Joint interest. either of them had any interest in the town site he held it in his own individual right. At least there is no allegation that he held it otherwise. He had his own particular interest to protect, and should have set out that interest in the pleadings. The entry was "for the benefit of the occupants thereof according to their respective interests." 2 Lester's Land Laws, 207. The mere fact of being an occupant does not necessarily give any interest in the town site. Interest of occupant. A man may occupy a costly store-house as tenant, of one who has erected it at great expense. Strictly speaking, such a man is an occupant, but his occupancy would everywhere be considered the possession and occupancy of his landlord. "The object of the law was to give the owners of lots a good title to their property." Opinion of attorney general, 1 Lester, 431. These owners must be occupants, as that is the evidence of their ownership, until the government parts with its title. For aught that appears in the petition

every lot on the town site of Winfield may have been occupied by settlement and improvement of parties other than the plaintiffs. How then are they interested in the object of the action? It would seem from the argument of the defendants in error that counsel hold that each inhabitant of the town is entitled to an equal share of the town site. But this would be gross injustice. The capital and labor of one man has resulted in his putting up buildings on ten times his average portion of the lots. He has done so much toward building up the town, and advancing the interest of the new community. He has done it, it is true, for his own interest, but the public has the benefit of it, and the amount he has so improved he is entitled to. The law of congress not only does not prescribe that each occupant shall be entitled to an equal share of the lots, but that it shall be for the occupants "according to their respective interests," plainly indicating that the interest of one may be greater than the others. The true criterion may be difficult in some cases of application, but that which a man has really occupied, and has manifested his occupancy of, by acts, such as improvements, that he is entitled to. Such facts ought to have appeared in the petition to have entitled the plaintiffs to relief. There would be no difficulty in their showing how they were occupants, if they were so in a sense that entitled them to any part of the town site. Then, if their interest was joint, they could unite in the action. If their interest was several, then they had no such interest as would authorize them to unite in the action. There is no averment in the petition of such a joint interest. *Newcomb v. Horton*, 18 Wis., 566; *Barnes v. City of Beloit*, 19 Wis., 93. The petition by its title proposes to be in favor of "Enoch Maris, A. A. Jackson, and C. H. Kingsbury, who sue for the benefit of all the occupants of the town site of Winfield." But the petition contains no allegation that the case is such as is contemplated by § 38 of the code. Neither the number of the occupants, nor their common interest, is alleged. Neither is there any averment that after the occupants have received deeds for

*Common and general interest.* [margin note]

what they are entitled to there will remain any part of the. town site undisposed of. If the interest was common, then its nature and character should appear by proper averments in the petition to be such as would entitle them all if before the court to maintain the action in their own names. *Habicht v. Pemberton*, 4 Sandf., 657. This nowhere appears in the petition. The defendants in error answer that the *title* is a part of the petition. This is true, but it is not a traversable allegation on which the defendants can take issue; and if even the statement in the title were repeated in the body of the petition, it would not present facts from which the court could infer such a state of facts as is provided for in § 38. These facts must be distinctly averred, so that the court as well as the pleader may see that there are circumstances existing that take the case out of the general rule, and bring it within the provisions of the section referred to.

*Title of peti-tion.*

The conclusion already reached necessarily leads to a reversal of the judgment of the district court, and is all that is absolutely necessary to decide in this case. But we may presume that the petition will be amended so as to raise the question of the legality of the deeds mentioned in the petition, and as that question has been elaborately argued in this and another case, and the court having given it that consideration that its importance and far-reaching consequences demand, it is thought advisable to present our views on that question. The law of congress under which the entry was made by the probate judge is found in 14 U. S. Stat. at Large, 541, and is made under certain conditions, which it is presumed existed or the proper officers would not have allowed the entry to be made. When the entry is thus made it is made as the law declares "in trust for the several use and benefit of the occupants thereof, according to their respective interests, the execution of which trust as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legislative

*3. Settlers on Town Sites. Act of Congress.*

authority of the state or territory in which the same may be situated." Before there can be an entry, the land must be settled upon and occupied by a certain number of inhabitants.

**4. Trust—rights of beneficiaries.** The moment the land is entered the trust vests an absolute right in the beneficiaries. There is no provision for the execution of the trust until the local legislature prescribes the necessary rules and regulations, but the legislature can only direct in what manner the trust shall be executed. It cannot under a pretense of providing rules for the execution of the trust change its character, or deprive those for whom it is intended of any benefits of the trust. Undoubtedly congress intended that some discretion should be left to the legislature, not only as to the manner of the execution of the trust, directly, but also some regard to the public welfare. The legislature may well direct how much of the unoccupied portion of the town site shall remain as parks or public grounds, because in such case the inhabitants have

**5. Rules for executing trust.** in one way the benefit of the lands. To some extent the legislature of the state has provided the rules and regulations for the disposal of the lots in such town sites, in ch. 109, Gen. Stat., 1073. There is no controversy about any portion of said act save as to § 12. That section is as follows:

"SEC. 12. All persons who select and lay out a town site, and their assigns, shall be deemed occupants of said town site, and the lots embraced therein, within the meaning of the above recited act of congress, and deeds shall be made accordingly."

So far as this section makes any other person than the occupants of the town site beneficiaries of the act of congress, it is inoperative. Undoubtedly "town companies," as recognized by our statute, may be occupants, and embraced within the terms of the law of congress. If such company is really an occupant, to the extent of its occupancy it is protected by the law. The company stands as any other individual, and holds no other or better relation. So far as the section gives the town company or persons who select and lay out a town

site any advantages over any other occupant, it is inoperative. The legislature in prescribing the rules for the execution of the trust cannot change it by substituting other parties to receive its benefits than those indicated in the law of congress. If individuals or town companies choose to lay out lands for a town site, and make money by that means, there is no law to prevent it; but they cannot pre-empt the public domain for that purpose under the law of congress. That law was made for the benefit of the occupants of the town, and not for speculators. The law of congress has received a construction similar to that which we have given it in the case of *Cash v. Spalding*, 6 Mich., 193; and while the court was divided on one of the questions raised, yet on this point both the opinion of the court and the dissenting opinion agree. Reference is made to *Leech v. Rauch*, 3 Minn., 448, and *Castner v. Gunther*, 6 Minn., 135, as making a different ruling. But the decisions do not sustain the opinion claimed for them. In the last cited case the learned judge who delivered the opinion of the court states that he holds with the decision in Michigan, but that point was not before the court. It could not therefore be passed upon.

The judgment of the district court sustaining the demurrer to the petition will be reversed.

All the Justices concurring.