## A. J. GREINER v. F. J. FULTON.

TOWN-SITE LOT — *Recovery of Possession.* A party who has actually occupied and improved a lot on a town-site, entered under §§ 2387, 2388 and 2389 of the Revised Statutes of the United States, need not necessarily be an actual resident of such town-site, to entitle him to recover possession of such lot. If he is a *bona fide* occupant of a portion of the town-site, he has a right to have his possession protected.

*Error from Seward District Court.*

EJECTMENT. Judgment for defendant, *Fulton*, at the September term, 1888. The plaintiff, *Greiner*, comes here. The facts appear in the opinion.

*P. P. Hillerman*, and *Painter & Ross*, for plaintiff in error.

Opinion by GREEN, C.: This action was brought by the plaintiff in error in the district court of Seward county, to recover the possession of lot 1, in block 44, in the city of Springfield. The plaintiff in error claimed to be the equitable owner of the premises, which were a part of the Springfield town-site, which was located and laid out on the public lands of the United States, some time prior to the 9th day of November, 1885. The lot in question had been previously occupied by John Kauble, who had made some improvements thereon. On the day named, Kauble sold the improvements

and his right to possession of the premises to the plaintiff, who entered into possession of the same and erected a dugout which was habitable, and continued to hold possession, through a tenant,. until ousted by the defendant below, about the 6th day of April, 1886. It seems that there were no other improvements upon this lot at the time the plaintiff purchased the same except those of Kauble; neither was there anyone claiming the premises adversely to him. In June, 1886, the probate judge made application to the United States land office for a patent to the town-site·in trust for the occupants, according to their respective interests, and the final entry was made and recorded in the office of the register of deeds of Seward county in 1887. The court below found "that the plaintiff never was and never became, prior to the application and final entry of the town-site for a United States patent, an actual resident on the town-site of Springfield, Seward county, Kansas, or any part thereof; and that the plaintiff did not contribute to the making of final proof on the town-site;" and sustained the demurrer of the defendant to the evidence, and rendered judgment against the plaintiff for costs. The plaintiff brings the case here.

The contest in this case arises out of rival claims to a lot in a town-site, upon government land, and the trial court seemed to have sustained the demurrer to the evidence upon the ground that occupancy and residence were both prerequisite conditions to obtain title under the provisions of §§ 2387, 2388 and 2389 of the Revised Statutes of the United States, and chapter 109 of the Compiled Laws of 1885. The language of § 2387 of the Revised Statutes is:

"Whenever any portion of the public lands have been or may be settled upon and occupied as a town-site, not subject to entry under the agricultural preëmption laws, it is lawful, in case such town be incorporated, for the corporate authorities thereof, and, if not incorporated, for the judge for the county court for the county in which such town is situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied, in trust for the several use and benefit

of the occupants thereof, according to their respective interests."

The supreme court of Minnesota has construed this section of the Revised Statutes:

"The language of the preëmption act of 1841 is essentially different from that of the municipal preëmption act of 1844. The former is limited as to the age of the person entitled to its benefits; as to his nativity; requires the party to make settlement 'in person,' and to 'inhabit and improve the same,' and 'erect a dwelling thereon;' prohibits him from leaving his own land to make settlement on the government land; and also from owning 320 acres at the time of making his preëmption. On all of these points the act of 1844 is silent, and where the preëmption right has been so carefully guarded in the one case, and in another and subsequent act all these restrictions are omitted, it would certainly be a strange construction to hold that they must be supplied by implication. It is true both acts speak of a settlement, but the act of 1844 defines what settlement is intended, viz., 'settled upon and occupied as a town-site,' while the previous act, both in terms, and in the construction which the department has placed upon it, limits the settlement to agricultural purposes. Nor, going outside the letter of the statute, do we find any authority in the reason of the case for placing such construction upon the act as was given by the court below. The object and idea of settling and building a town is not for the purpose of agriculture, but for that of trade. And being used for purposes of trade, it cannot (at least only to a limited extent) be used for cultivation of the soil. And this idea was evidently entertained by congress in framing the law of 1844, in the use of the language, 'and therefore not subject to entry under the existing preëmption laws.' The intent was to provide for cases to which no law then in existence applied. As the object of the settlement and occupancy of a town-site is totally different from that of a settlement under the act of 1841, no legitimate inference can be drawn that the particular manner or requisites of settlement and occupancy in each case must be the same. And the requisites of the act of 1844, as to settlement and occupancy, are complied with when these are such as to attain the object in view, namely, the use of the land as a town-site, for purposes of trade, commerce, or manufactures. It is obvious that such a settlement need not necessarily be

in person, nor require any cultivation of the soil." (*Leech v. Rauch*, 3 Minn. 448.)

In a very recent case, involving the question of a town-site trust and the duty of the probate judge, under the same act of congress, this court has said:

"The occupants of the town-site, whoever they may have been, were the equitable owners of the land settled upon and occupied, and they were entitled to a conveyance from the probate judge. Their rights were fixed by the act of congress, and the legislature was powerless to prescribe a rule which would give the land and lots to others than the occupants thereof. The provisions of the legislative act mainly conform to the act of congress, but so far as they may conflict with that act, they must be held to be void. If the town company was an occupant of any portion of the town-site, it was entitled to a conveyance of its respective interest." (*Investment Co. v. Munson*, 44 Kas. 491; same case, 24 Pac. Rep. 977.)

This decision clearly recognizes the right of an occupant to a title. It could hardly be claimed that a town company could become a resident; yet it said it would be entitled to a conveyance. (See, also, *Town Co. v. Maris*, 11 Kas. 128; *Town Co. v. De Long*, 11 id. 153; *Sherry v. Sampson*, 11 id. 611; *Carson v. Smith*, 12 Minn. 546; *Cook v. Rice*, 2 Colo. 131; *Clayton v. Spencer*, 2 id. 378; *Adams v. Binkley*, 4 id. 247; *Mayor of Aspen v. Aspen T. & L. Co.*, 10 id. 191.) There was some evidence upon the part of the plaintiff to indicate that he had in good faith occupied the premises in question, and that the defendant had ousted him of that possession. The court should not have sustained the demurrer to the evidence.

We recommend a reversal of the judgment.

By the Court: It is so ordered.

All the Justices concurring.