ROBERT DOWNMAN *et al.* v. GEORGE S. SAUNDERS.

1. TOWNSITE COMMISSIONERS—*Not a Judicial Tribunal.* Under the law regulating the administration of the trust where lands are entered by the probate judge for the use and benefit of the occupants of such land, as a townsite, in this territory, as adopted by congress from the State of Kansas, the commissioners appointed by the probate judge to set off lots to the occupants of a townsite are not a judicial tribunal, and their award is not a judicial determination, and it is unnecessary in the petition of one who seeks to recover lots by virtue of his actual occupancy as against one who holds the deed from the probate judge, to allege fraud in the making of such award in order to state a cause of action in his petition.

2. TOWN LOTS — *Settlement — Improvements — Ejection Therefrom.* One who, by force and violence, enters into the possession of another on a government townsite, and ejects him from his settlement and improvements, and prevents him from making further improvements by violence and intimidation, cannot defeat the prior settler in his effort to acquire title to the lots settled upon by him, because of the meagerness of the improvements of such prior settler.

3. GOVERNMENT TOWNSITE — *Occupancy — Residence.* It is not necessary that an occupant of lots on a government townsite should also be a resident either of the lots or of the townsite.

*Error from the District Court of Canadian County.*

*J. C. Roberts* and *C. H. Carswell,* for plaintiff in error.

*John I. Dille* and *John Schmook, Jr.,* for defendant in error.

The opinion of the court was delivered by

BIERER, J.: George S. Saunders brought his action in the district court of Canadian county against Cliff Tucker to recover six lots in the town of Okarche, Canadian county, Oklahoma Territory, of which he claimed he was the equitable owner, and entitled to a conveyance of the lots from the defendant because of his occupancy thereof for townsite purposes. Afterwards, Robert Downman intervened in the case and

filed a separate answer showing that subsequent to the filing of the action by Saunders he had purchased the lots from Cliff K. Tucker, and claimed that he was the lawful owner of the property. Plaintiff claimed in his petition that on the 19th day of April, 1892, which is the date of the opening to settlement of what is known as the Cheyenne and Arrapahoe country, the townsite of Okarche was settled upon by several hundred people, and the land covered by the townsite claimed for townsite purposes; that Winfield S. Smith settled upon and occupied lots one and five; Charles A. Cunningham settled upon and occupied lots three and four, and J. N. Radeker settled upon and occupied lots two and six, all in block sixteen, in the town of Okarche, and that they made valuable improvements thereon; that on the 22d and 23d days of April, 1892, the plaintiff purchased said lots for a valuable consideration from said parties, and took actual possession thereof, fenced said lots and continued to be in the actual possession thereof until the 19th day of July, 1892, when Cliff K. Tucker, by force, broke down and destroyed plaintiff's fence and his other improvements on the lots and took possession of the lots and ejected the plaintiff therefrom and refused to permit the plaintiff to make any further improvements on the lots, and by force, threats, menaces and the use of deadly weapons, kept the plaintiff out of the possession of the lots; that on the 27th day of July, 1892, the probate judge of Canadian county entered the tract of land covered by said townsite at the land office at Kingfisher, Oklahoma Territory, for the use and benefit of the occupants thereof, and that three persons were appointed commissioners by the probate judge to award the lots in said townsite to the respective occupants; that the plaintiff filed his application and made his proof before said commissioners, but that they wrongfully and unlawfully awarded the lots to Cliff K.

Tucker, and that the probate judge, over the protest and objections of the plaintiff, on the 8th day of October, 1892, the same day this action was brought, deeded said lots to said Tucker, and that he had offered and tendered to the probate judge, before said deed was made, all the fees, expenses and assessments required by said probate judge and the commissioners to be paid for the issuance of a deed to said lots, and in his petition tendered and offered to pay into court for the use and benefit of the defendant any sum the court might find due the defendant, and for the fees and assessments on said lots.

To this petition both defendants filed their answer, admitting all of the mattes with reference to the general settlement of the land on which the townsite of Okarche was located for townsite purposes, the proving up of the same and the appointment of commissioners, etc., but denying the plaintiff's equitable claim to these lots. On a trial before the court, the proof fully supported the allegations of the plaintiff's complaint, and the court found "that the plaintiff settled upon and occupied the lots one (1), two (2), three (3), four (4), five (5) and six (6), block sixteen (16), in the town of Okarche, county of Canadian, Territory of Oklahoma, as alleged in his complaint, and that he was the only *bona fide* occupant of said lots on the 27th day of July, 1892, at the time said lots and said townsite were entered at the land office by the probate judge of said county for the use and benefit of the occupants thereof, and that the other allegations of the plaintiff's complaint as to the occupancy and entry of said townsite for business and trade are true; that plaintiff complied with all the requirements of said probate judge and commissioners appointed by him to survey and plat said townsite, and to set off and allot lots and blocks to the respective owners thereof, and with all of the requirements of law and

with all of the conditions precedent required of him to obtain legal title and a conveyance of said lots from said probate judge; that said judge refused to convey said lots to plaintiff and unlawfully conveyed the same to defendant, Cliff K. Tucker, that at the commencement of this action plaintiff was the equitable owner of said lots and entitled to a deed therefor, and that defendant Cliff K. Tucker, was at that date the holder of the naked legal title, and was, and is in equity, holding such legal title as trustee for plaintiff; that intervenor, Robert H. Downman, purchased said lots of his co-defendant, Cliff K. Tucker, after the pendency of this action, after the filing of a *lis pendens* notice herein, and after he had actual knowledge of plaintiff's claim to said lots and the pendency of this action." A motion for a new trial was made, overruled and an exception allowed. Judgment was given the plaintiff for the recovery of the lots, from which defendant and intervenor appeal.

The first error assigned in the brief of plaintiffs in error is that the plaintiffs' petition does not state sufficient facts to constitute a cause of action. They contend that the commissioners appointed by the probate judge are judicial tribunals with similar powers and authorities to those possessed by the land tribunals for the determination of controversies between contending claimants on government lands, and that their decision upon questions of fact of settlement and occupancy are final unless impeached for fraud, accident or mistake, and that the allegations of fraud in the complaint are simply in general terms and insufficient to impeach the award of the commissioners. If the first proposition were true—that is, that the commissioners are a judicial tribunal—we would have to sustain the objection to the complaint, because it would not be sufficient as a complaint seeking to set aside an award or judgment of the land tribunal upon

which one party had acquired title to the tract of government land, because the only allegation in the complaint that could be considered as an allegation of fraud, is that the probate judge and commissioners unlawfully and wrongfully, and without authority of law, refused to report in favor of plaintiff and to issue him a deed for said lots. Such an allegation would be wholly insufficient to impeach the decision of a body possessing judicial authority. (*Marquez v. Frisbie*, 101 U. S. 473.) But the commissioners, in carrying out the provisions of the Kansas townsite law, as placed in force in this territory by § 17 of the act of March 3, 1891, were not a judicial tribunal. Counsel for plaintiffs in error treat this as an open question, although it was held squarely against their position in the case of *Brown v. Parker*, 39 Pac. 567, (2 Okla. Rep. 258,) decided by this court almost a year ago, and, although, even without this decision of *Brown v. Parker*, it could hardly be said to have been an open question since the decision of the supreme court of Kansas upon this very townsite law, in the case of *Rathbone v. Sterling*, 25 Kan. 444, where it was said, Mr. Justice Brewer speaking for the court: "It seems to us that the legislature intended that there should be no formal trial or conclusive adjudication; that as to such questions as arise in this case, their award should be simply *prima facie* evidence of occupancy and right. They inquire into and report facts; they do not decide disputes or render judgments. Our conclusion, then, is that in a case in which there was a single occupant of a lot, the award of the commissioners and the subsequent deed of the probate judge are not conclusive against the rights of the occupant."

Counsel for plaintiff in error, however, without even making a reference to these cases of *Brown v. Parker* and *Rathbone v. Sterling*, and without a single suggestion as to why they do not properly declare the law

under our townsite act, still contend that the commissioners, in making their award, are a judicial tribunal and cite in support of their contention the cases of *Anderson v. Bartels*, 7 Col. 256 and *Chever v. Horner*, 11 Col. 68, the last of which cases simply follows the first, which is a more elaborate opinion upon the question, and in which it is held that, under the law of Colorado, passed in pursuance of the delegated power given by the townsite law of congress to the states and territories to make regulations for the execution of the trust, an award of a probate judge is final, unless impeached on some well known equitable grounds therefor. These decisions, manifestly, can have no bearing whatever upon the question, for they are not made upon a statute like the Kansas statute, which came, with its construction, as ours by adoption by congress did, to this territory. The case of *Anderson v. Bartels* shows that in Colorado the probate judge was granted judicial power and was made a tribunal to try and determine questions concerning the occupancy of parties upon a townsite. A part of the language of the act, as quoted in the above cited case, is: "It shall be the duty of said probate judge to inquire into the same by such competent testimony as may be produced before him in that behalf and if he shall be of opinion that such lots or land have been wrongfully omitted, he shall thereupon include the same in such list, and proceed to advertise and sell the same." And upon the authority granted to the probate judge by this statute to hear and determine controversies, the supreme court, in this case said: "He was invested with functions analogous and similar in character to those of the land department of the general government, or of the officers of a state, charged with the same class of duties. His duties involved the hearing and consideration of testimony concerning the rights of claimants, and passing upon

its competency, credibility and weight   It also involved judidicial trials before him, in certain instances, wherein he was required to render judgments, from which appeals might be prosecuted to the supreme court of the territory.  The congressional act of May 28, 1864, authorized said judge to execute the trust thus reposed in him by the disposal of lots and parcels of land in accordance with rules and regulations to be prescribed by the territorial legislature."

Our statute grants no such power to the commissioners.  They are nowhere directed to hear testimony, to try a case, or to determine any controversy between opposing claimants.  They are simply directed "to set off to persons entitled to the same" the lots or grounds, and they were given no authority to award lots to a person not entitled to them, nor to swear witnesses, or hear proof, or make a determination that would preclude the parties from having an investigation of the facts in a court of equity, and it is a different statute entirely from the Colorado statute, and, of course, the construction thereon must, necessarily, be different.

Counsel for plaintiff in error contend that the judgment should be reversed because plaintiff below was not an actual occupant upon the lots on July 27, 1892, the date when the land was entered for townsite purposes, and because the improvements and possession of the plaintiff were not sufficient to constitute him an occupant of the lots for townsite purposes.  It would be a queer rule of law that would permit plaintiffs in error to urge either of these objections to the plaintiff's right to the lots.  The findings of fact of the court below are all in favor of the plaintiff, and they are, generally, that the allegations of his complaint are true, and specifically, that he was the only *bona fide* occupant of the lots at the time the townsite was entered at the land office, and the evidence shows that

the plaintiff, sometime prior to Tucker's forcible and unlawful entry thereof, was in the actual possession of the lots, had fenced them and had built two small foundations of two by four timbers, nailed together; that Tucker knew of plaintiff's settlement and occupancy on the lots, and had gone to plaintiff and tried to buy three of the lots for the purpose of locating his lumber yard thereon; that the plaintiff declined to sell them for that purpose, stating that he did not want a lumber yard there, and Tucker then made the remark that Saunders might as well sell them to him; that if he did not, he would jump them anyhow, as the lumber company was worth three million dollars, and they would beat him, Saunders, out of the lots. The evidence also shows that Saunders had made arrangements for lumber to build on the lots, and went there on July 22d for the purpose of making further improvements and that Tucker, with a hatchet in his hand, refused Saunders permission to go upon the lots, and threatened to split his head open if he went upon them or even through his own fence. Saunders is admitted to be a prior settler to Tucker. His rights to the lots attached long prior to those of Tucker and existed with Tucker's knowledge, and it does not lie in the mouth of a trespasser, a law-breaker, a ruffian and a bully, who keeps a settler off of government land, to claim that he has a prior right to acquire title because of the insufficiency of his adversary's occupancy and improvement, when better improvements have been prevented by the unlawful force and violence of the very person who makes these objections against the right of the settler. It would not do to hold that one settler may eject another settler from his settlement, and take possession of his improvements, and prevent the first settler from making further improvements, and then succeed on account of the slight improvements of the first party.

Such a holding as that would be placing a premium upon fraud, violence and intimidation, which we cannot consent to do. The bounty of the government in giving lands to occupants for townsite purposes at the date of the entry, was not intended to aid those who unlawfully and forcibly take possession of the very ground settled upon by another party. As is said by Mr. Justice Field, in *Ricks v. Reed*, 19 Cal. 566, and quoted and approved in *Rector v. Gibbon*, 111 U. S. 276; "but this provision does not establish that it was the intention of congress to give the benefits of the entry to mere temporary occupants of particular tracts at the date of the entry; without reference to the character of their occupancy, and thereby in many instances deprive the original *bona fide* settlers of the premises and improvements in favor of those who had by force or otherwise intruded upon their settlement. Were such the effect of the provision in question, the trespasser of yesterday or the tenant of to-day would often be in a better position than parties who, by their previous occupation and industry, have built up the town, and made the property valuable. We do not think that congress could have contemplated, that results of this nature should follow upon its legislation, but on the contrary, that it intended that the original and *bona fide* occupants should be the recipients of the benefits of the entry to the extent at least of their interests."

As was said by Mr. Justice Miller, in the often cited case of *Atherton v. Fowler*, 96 U. S. 513: "The generosity by which congress gave the settler the right of pre-emption was not intended to give him the benefit of another man's labor, and authorize him to turn that man and his family out of their home. It did not propose to give its bounty to settlements obtained by violence at the expense of others. The right to make a settlement was to be exercised on unsettled land; to

make improvements on unimproved land.    To erect a
dwelling house did not mean to seize some other man's
dwelling.    It had reference to vacant land, to unim-
proved land; and it would have shocked the moral
sense of the men who passed these laws, if they had
supposed that they had extended an invitation to the
pioneer population to acquire inchoate rights to the
public lands by trespass, by violence, by robbery, by
acts leading to homicides, and other crimes of less
moral turpitude."

There was no error, under the evidence, in finding
that in equity Saunders was the actual occupant of
the land at the date of the entry of the townsite, for
it clearly shows that he was an occupant prior to the
interruption by Tucker, and that he would have been
an actual occupant, and would have had ample im-
provements on the land to entitle him to a deed by
virtue of his occupancy and improvements, except for
the forcible resistance of Tucker, and this resistance
cannot permit Tucker to acquire and to convey to an-
other, who had notice of Saunder's claim, the title to
property which, in equity and good conscience, be-
longs to Saunders.

Nor is there anything in the contention of plaintiffs
in error that Saunders cannot recover because he was
not a resident.    There is nothing in the law of con-
gress which grants to parties a right to acquire title
to government land by townsite entry and occupancy,
that requires that a claimant shall be a resident of
the townsite.    It is only necessary that be be an occu-
pant of the land to which he claims title.    (*Griner v.
Fulton*, 46 Kan. 405.)

The judgment of the court below is affirmed with
costs.

Burford, J., not sitting; all the other Justices con-
curring.