The opinion of the court was delivered by
Valentine, J.:
, ,, Statement of the case. The facts of this ease, as stated by the plaintiffs in error, are as follows: On or about August 1st, 1871, the lands upon which the city of Independence was and still is located were government lands, subject to entry under the town-site laws of congress. Said city was at said date, and ever since has been, an incorporated ’ 1 _ J-city 0f sfate 0f Kansas. At said date one E. E. Wilson, then mayor of said city, acting under authority conferred by said town-site laws, had filed upon and was seeking to enter at the U. S. local land-office, for the use and *77 benefit of the occupants thereof, the lands upon which said city is located. Various adverse claimants had also filed upon portions of said lands, and were seeking to enter the same as agricultural claims under the pre-emption laws of congress. The controversy created by such adverse claims was then pending before said land-office, and to support and maintain the issues on his part, said Wilson, for the use and benefit of said occupants, retained and employed, as attorneys, the plaintiffs in this suit, promising and agreeing, in behalf of said occupants, and for himself' and his successors, to pay said plaintiffs a certain stipulated sum per day for each day’s service by them rendered under such employment. Under such employment said plaintiffs duly rendered and performed a certain number of days’ service in said controversy, receiving payment in part therefor, from said Wilson, during his continuance in office, there being a balance remaining due and unpaid. On or about May 10th, 1872, said Wilson was succeeded in his office of mayor by James DeLong, one of the defendants. At the time of said succession, the proofs in said controversy in said land-office had been taken and submitted, and the case was still pending, awaiting decision. Immediately upon his said succession, said DeLong entered upon the continuance of the performance of the trust commenced by his said predecessor in office, and availing himself of the said services of plaintiffs, and by means of the testimony taken and submitted by them, entered at said land-office, in accordance with said town-site laws, the lauds upon which said city is located, in trust .for the use and benefit of the occupants thereof. Said DeLong, in his capacity of mayor aforesaid, thereupon proceeded to convey to said occupants, in severalty, the lots by each occupied, assessing to, demanding of, and receiving from each occupant, as condition precedent to such conveyance, certain moneys, which he (said DeLong) claimed were necessary to defray the costs and expenses of .the entry of said lands, including the litigation aforesaid, with also costs of conveyance, and had in his hands, at the time of filing of plaintiffs’ petition in the court below, moneys derived *78 from the sources aforesaid in amount sufficient to pay plaintiffs’ demand and all other proper charges against said fund so collected from said occupants; that said DeLong has refused to permit others of the corporate authorities of said city to join with him in the performance of the trust aforesaid, but has in all things, except so far as previously executed by said Wilson, assumed the performance of the entire trust created by said town-site laws, and the premises aforesaid; and by the assumption of said trust, and his acts aforesaid, said DeLong has become liable to pay plaintiffs, out of said fund, the balance due them as aforesaid, but that he neglects and refuses so to do, although often requested, and threatens to convert said funds so in his hands to his own use; and plaintiffs aver that said DeLong is pécuniarily irresponsible. As against defendant Leonard the averments of said petition are, that' the moneys so assessed and collected by said DeLong were, at the commencement of the action, in said Leonard’s hands for safe-keeping. Plaintiffs prayed that said DeLong and Leonard be enjoined from disposing of so much of said fund as is necessary to satisfy their demand and costs, and that on final hearing they have judgment against said DeLong for the amount found to be due them; that he be adjudged to hold said fund in trust for the payment thereof, and so apply' the same.
„ , . „ proceedings, Upon the commencement of the action the plaintiffs obtained a preliminary injunction in accordance with prayer of the petition. At the December Term 1872 of the district court the defendants moved to dissolve the preliminary injunction for want of equity in the petition, and the court sustained the motion arid dissolved said injunction. At the same term the defendants demurred to the petition, upon grounds, first, that the facts stated did not constitute a cause of action; and second, that there was a defect of parties defendant — and the district court sustained said demurrer, and rendered judgment thereupon against the plaintiffs for costs. Plaintiffs excepted to all foregoing orders *79 and said judgment, and bring their case to this court for review.
, , „ Sjune1!,67, 1868' The entire authority of the mayor of an incorporated town or city respecting the entrance and conveyance of town-sites may be found in the following statutes of the United States and of this state. The act of congress for the relief of the inhabitants of cities and towns upon the public lands, approved March 2, 1867, provides as follows:
“That whenever any portion of the public lands of the United States have been or shall be settled upon and occupied as a town-site, and therefore not subject to entry under the agricultural pre-emption laws, it shall be lawful, in case such town shall be incorporated, for the corporate authorities thereof) and if not incorporated for the judge of the county court for the county in which such town may be situated, to enter at the proper-land office, and at the minimum price, the lands so settled and occupied, in trust for the several use and benefit of the occupants thereof according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sale thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the state or territory in which the same may be situated.” (14 U. S. Stat. at Large, 541; 2 Lester’s Land Laws, 207.)
An act of congress amending the foregoing act, approved June 8th, 1868, provides as follows:
“That the inhabitants of any town located on the public land of the United States may avail themselves, if the town authorities elect so to do, of the provisions of the act of March 2, 1867, entitled, ‘An act for the relief of the inhabitants of cities and towns upon the public lands,’ * * * provided also, that in addition to the minimum price of the lands included in any town-site entered under the provisions of this act and ‘An act for the relief of the inhabitants of cities and towns upon the public lands,’ approved March 2d 1867, there shall be paid by the parties availing themselves of the provisions -of said acts all costs of surveying and platting any such town-site, and expenses incident thereto, incurred by the United States, before any patent shall issue therefor.” (15 U. S.Stat. at Large, 67; 2 Lester’s Land Laws, 216.)
*80 It is conceded that these two acts are applicable to the Osage lands, and to the town-site of Independence. (16 U. S. Stat., 557.)
The act of the legislature of Kansas, relating to town-sites, approved March 2d, 1868, provides as follows:
“Section 1. In all cases in which any of the public land of the United States in the state of Kansas has been or shall hereafter be selected and occupied as a town-site, if the inhabitants of such town shall be at the time incorporated, it shall be the duty of the corporate authorities of such town, or, if not incorporated, then of the probate judge of the county in which such town-site is situated, whenever called on by any of the occupants of such town, and the money, for the entrance of such town-site, furnished, to enter such town-site under the act of congress in such case made and provided.
“Section 2. When a town-site is entered under the above rcited act of congress by the corporate authorities of any incorporated town, deeds shall be made by the mayor or other chief officer of such town for the time being, and said deed of deeds shall be attested by the city clerk or register, and shall be signed by such mayor or other chief officer, under the corporate seal of said city, attested by said city clerk or register, if said city shall have a corporate seal; and, if it shall have no seal, under the scrawl or private seal of said mayor or other officer, and attested by the city clerk or register as aforesaid.” (Gen. Stat. of Kas., 1073; Laws of 1870, p. 250.)
Under the acts of congress and the laws of this state the power to enter town-sites where the town is incorporated is conferred upon the corporate authorities of the town or city, as a body, and not upon the mayor alone, or upon any other single officer.
power and duty of mayor. In 1871 and 1872, and indeed in 1873, the mayor and council of a city in this state (whether such city was a city of the first, second or third class,) taken together constituted corporate authorities of such city. (Cities of the First class, Gen. Stat., 130, § 7; — cities of the second class, Gen. Stat., 155, § 5, laws of 1871, page 146, § 8, and laws of 1872, page 193, § 5; — cities of the third class, laws of 1869, page 81, § 5, and laws of 1871, page 122, § 14.) *81 And at that time there was no mayor of any “ town or village,” (Gen. Stat., 1065, § 2; laws of 1871, page 142, § 96,) nor of any city except cities of the first, second and third classes. Hence it will be perceived, that no mayor in Kansas had any authority alone, in 1871 or 1872, to enter any town-site, nor has he now any.such authority. Under the practice of the land department, however, the power of the mayor to enter town-sites will not be questioned by the government if it is not questioned elsewhere. (1 Lester’s Land Laws, 430.) And so, town trustees, where they are the corporate authorities; may enter town-sites. (1 Lester’s Land Laws, 443.) Also, under the acts of congress, the power of the corporate authorities to enter town-sites, when the town is incorporated, is purely discretionary, in every case — a mere privilege, or naked authority, which they may exercise or not at their option. The acts of congress simply make it lawful for the corporate authorities to enter such town-sites, but do not attempt to enjoin it upon them as a duty so to do. Indeed, congress could not enjoin it upon them as a duty, as such power does not belong to congress. But under our statutes it is made the duty of the corporate authorities to enter such town-sites “ whenever called on by any of the occupants of such town, and the money for the entrance of such town-site furnished” to them. But it is never the duty of the mayor alone to enter a town-site; nor is it the duty of the corporate authorities to so enter the same, unless called on by some one or more of said occupants, and the entrance-money furnished to them. In the present case, as ho one of said occupants ever called upon the mayor or council, and furnished the entrance-money, it never became the legal duty of either of them, or both together, to enter said town-site. The council therefore never attempted to do anything in the premises; and whatever mayor Wilson and mayor DeLong did, was purely voluntary on their part.

*82
i. Entry of attorneys-’ contract of employment.

*83
2. Defect of parties.

*81 The plaintiffs seemed to found their claim principally upon a contract entered into between themselves and mayor Wilson. They claim that mayor Wilson employed them *82 as attorneys - at - law to assist him. in a contest which he had with other parties for the entry of . , said town-site. JNow, as mayor Wilson had no authority alone to enter said town-site, it would seem that he alone could not employ counsel to assist in the entry; or rather, it would seem that he alone could, not employ counsel and make their fees a charge, a lien, an incumbrance upon the trust estate when it should be created by the entrance of the land. It is not claimed that any express authority is given to the mayor for any such purpose. Indeed, it is not claimed that any express authority is given to the corporate authorities or to any one else for such a purpose. And it certainly will not be claimed that the mayor alone has any such authority by implication. The mayor in fact has no authority in the premises alone; and the power of the corporate authorities is simply to enter the land. Beyond that no power is expressly given even to them. And implied authority is seldom presumed — never, except to carry out powers expressly granted, and probably never then except to carry out powers which are enjoined upon those who are to exercise them as duties. The services for which the plaintiffs claim judgment'were rendered under said contract with mayor Wilson, and during his term of office as mayor. Mayor Wilson never entered said town-site. It was entered by mayor DeLong, after mayor Wilson’s ■ term of office had expired. Therefore mayor Wilson never became or was a trustee. No trust estate was ever created during his term of office to which the plaintiffs’ claim could attach. Mr. Hill says, “A trustee, in the widest meaning of the term; may be defined to be, a person in whom some estate, interest or power in or affecting property of any description is vested for the benefit of another.” (Hill on Trustees, 41.) And “It may be observed that at law no person can be a trustee, unless he takes a vested legal interest in the trust estate.” (Hill on Trustees, 51.) We suppose that no one will claim that any estate or intex’est, either legal or equitable, was ever vested in mayor Wilson. The whole estate, legal and equitable, re *83 mained in the government until after., mayor Wilson’s term of office expired. Then how can it be claimed, that the plaintiffs’ claim attached to an estate which had not yet been created ? Did it attach to the property while the town-site belonged to the United States ? But even if mayor Wilson had had authority to employ the plaintiffs the value of their services would not be a charge or lien upon the trust estate in their favor. They should not look to the trust estate, nor to mayor Wilson’s successor, for compensation, but to mayor Wilson himself, personally, and alone. (Lewin on Trusts, 561.) And then when mayor Wilson should pay them for their services the amount thereof would be a charge or lien on the trust estate in his favor, if in favor of any one. (Hill on Trustees, 570.) But if said contract was valid, and if said services of the plaintiffs created a lien or charge on the trust estate, then there was a defect of parties. All the trustees, and all the cestuis que trust, should have been made parties defendant. (Lewin on Trusts and Trustees’, 841, 845, 856; Hill on Trustees, 543, 545, et seq.) If the city council were co-trustees with the mayor’, they should have been made parties to the action, and unquestionably the occupants of said town-site should have been made ’parties, as they were the cestuis que trust, the beneficiaries.
'offund; The plaintiffs however set up another claim against the defendants. They claim that the occupants, by paying certain moneys to mayor DeLong to pay expenses with, created a certain trust in favor of themselves; that the occupants were the authors of the trust, mayor DeLong the trustee, and themselves the cestuis que trust. Now if said contract between themselves and mayor Wilson had been valid and binding as against the trust estate of the occupants, or even against mayor DeLong, then there would be some ground for such a claim; but as said contract is not binding upon the said trust estate, nor against DeLong, there is not much ground for such a claim. Under the circumstances of this case three things are necessary to *84 create a trust with respect to said moneys in favor of the plaintiffs: first, the payment of the money by the occupants, must have been made with the certain intent that it should be appropriated in satisfaction of the very claim declared on by the plaintiffs; second, its acceptance by DeLong must have been for that very purpose; third, an assent must have been given to the arrangement by the plaintiffs, after full notice. Not one of these things has been alleged in the plaintiffs’ petition. It is merely alleged that mayor DeLong made assessments on the several occupants when he made deeds to them for the lands they respectively occupied, “ claiming such assessment and demand to be necessary for the payment of the expenses and costs of said suit before said register and receiver, and for the payment of money advanced to enter said lands, and to pay the cost of conveyancing, and that the money received by him would be so applied” — without even mentioning that mayor DeLong, or the occupants, ever knew that the plaintiffs had performed any services for mayor Wilson, or for any one else, and without even mentioning that mayor DeLong or the occupants ever knew at any time before said money was paid to DeLong that any such claim as the plaintiffs’ had any existence. It cannot be held in such a case that it was intended by the occupants and DeLong to create a trust in favor of a party who had no legal or valid claim against the trust estate of the occupant, nor against mayor DeLong, the trustee. It can only be supposed that the occupants paid the money to DeLong for the purpose of having him discharge all claims which were legal debts, charges, liens, or incumberances upon or against the estate which DeLong held in trust for them, or which were legal claims against mayor DeLong himself as their trustee.
The judgment of the court below is affirmed.
All the Justices concui’ring.