R. E. ALLEN, *et al.*, v. S. D. HOUSTON, *Probate Judge of Cloud County, Kansas.*

TOWN SITE, *When Probate Judge to Appoint Commissioners for its Division.* Where, under the act of congress entitled "An act for the relief of the inhabitants of cities and towns upon the public lands," (14 U. S. Stat. at Large, 541,) and under the act of the legislature entitled "An act relating to town sites," (Gen. Stat. 1073,) the corporate authorities of an incorporated town or city have entered at the U. S. land office the town site of such town or city, the probate judge of the county in which such town or city is situated has no power, under section 4 of said act of the legislature, to appoint commissioners to divide such town site among the several occupants thereof. The probate judge has power to appoint such commissioners only in cases where he himself has entered the town site.

*Original Proceedings in Mandamus.*

ON the 30th of March, 1878, an alternative writ of mandamus was issued out of this court, directed to *S. D. Houston,* probate judge of Cloud county, commanding him as such officer, on or before the 30th of April, 1878, to perform a certain alleged official duty, or to show cause, etc. The defendant appeared and answered, showing cause. The case was duly submitted, July 3d, 1878, and the subjoined opinion filed on the 26th of November, 1878.

*Johnson & Davis*, for plaintiffs.

*L. J. Crans*, for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This is an action of mandamus, brought originally in this court by R. E. Allen and others, to compel

S. D. Houston, probate judge of Cloud county, to perform what they claim to be an official duty imposed upon him by §4 of the act of the legislature entitled "An act relating to town sites." (Gen. Stat. 1074.) The alternative writ recites, and the evidence shows, that prior to the 19th of September, 1877, certain lands then belonging to the United States were duly entered under an act of congress entitled "An act for the relief of the inhabitants of cities and towns upon the public lands," (14 U. S. Stat. at Large, 541,) by the corporate authorities of the then incorporated town of Concordia, for the benefit of the occupants of the town site of said town, and that a patent was duly issued for said lands September 19th, 1877; that the plaintiffs were original occupants and still continue to be occupants of said lands, and they claim to have the right to have said lands divided, and set off and conveyed to them, under said acts of congress and of the legislature, according to their respective interests; that on March 1st, 1878, the plaintiffs presented to the defendant, as probate judge of said county, a petition and demand that he proceed under said act of the legislature, and appoint three commissioners to divide and set off said land, as aforesaid; that the defendant heard said petition and demand, and then denied the same, solely on the ground that he had no power or jurisdiction to act in the premises. Now, whether the defendant, as probate judge, had sufficient power or jurisdiction to act in the premises, and to appoint commissioners for such a purpose, is the only question that demands our consideration. The probate judge was willing to act in the premises, provided he had the power or jurisdiction to do so; but, as he construed the law, he did not believe that he had any such power or jurisdiction, and for that reason only refused to act. Does the law authorize the probate judge to act in such a case? That other jurisdiction and power than that specially conferred upon probate courts and probate judges by the constitution may be conferred upon probate courts and probate judges by statute, has already been determined in this court. (*In re Johnson,* 12 Kas. 102, 103, 104, and cases there cited;

especially *Sherry v. Sampson*, 11 Kas. 611; *Winfield Town Co. v. Maris*, 11 Kas. 128; *McTaggart v. Harrison*, 12 Kas. 62.) And there is nothing in the constitution or in any act of congress that would prohibit the legislature from conferring upon probate judges just such power as the probate judge refused to exercise in this case. The only question, then, in the case is: Has the legislature conferred upon probate judges the power and jurisdiction in question?

Section 1 of the said act of the legislature relating to town sites, provides that, for incorporated towns, the corporate authorities shall enter the town site; and for unincorporated towns, the probate judge shall enter the same. Section 2 provides that where the corporate authorities make the entry, the mayor or other chief officer of such town shall make the deeds. Section 3 provides that where the probate judge makes the entry, he shall make the deeds "in the manner hereinafter prescribed." Section 4 provides as follows:

"At any time after the entry of any such town site, the probate judge of the county in which such town may be situated may appoint three commissioners, who shall not be residents of such town, or the owners of any interest therein; and it shall be the duty of such commissioners to cause an actual survey of such site to be made, conforming, as near as may be, to the original survey of such town, designating on such plat the lots or squares on which improvements are standing, with the name of the owner or owners thereof, together with the value of the same."

Sections 5 and 6 provide that said commissioners shall give notice to all persons interested, and shall then proceed to set off to the persons entitled to the same, according to their respective interests, the lots, squares or grounds to which each of the occupants thereof shall be entitled. Section 7 provides that the commissioners shall levy taxes on said lots, &c., to pay expenses. Section 8 provides that "such commissioners shall make due return of their proceedings to the probate judge," and file therewith "all the papers, plats, valuations and assessments connected with such proceedings." Section 9 provides as follows:

"The said probate judge shall then proceed to collect the taxes levied as aforesaid, and he shall make deeds to the lots so set apart to the various parties entitled to the same; but no deed shall be made to any person until such person shall have first fully paid all the tax or assessment so levied against him; and in case any person shall refuse or neglect to pay such tax or assessment so made against him, the probate judge may proceed to offer such lots and improvements for sale to the highest bidder, first giving such public notice as may be required in case of execution against the lands and tenements of a debtor in the district court."

Section 10 provides that the probate judge shall reimburse all persons for "necessary expenses incurred." The other two sections (11 and 12) of this act have no application to this case.

Difficulties arise in this case in whatever light we may view the principal question involved therein. If we adopt the view of the plaintiffs, that the probate judge has the jurisdiction contended for by them, then it may be answered that all the authority given to the probate judge to appoint commissioners seems to be given to him merely for the purpose of enabling *him* to ascertain to whom *he himself*, and not any other person, should make deeds for lots in cases where *he himself* has made the entry of the town site. Section 3 authorizes him to make deeds where he has entered the town site, but says that he shall do it "in the manner hereinafter prescribed;" and then follow §§ 4 to 11 inclusive, seemingly for the purpose principally, if not entirely, of "prescribing" when and in what manner the probate judge, and the probate judge only, shall make deeds. Section 4 immediately follows the said words, "in the manner hereinafter prescribed;" that is, it follows those words seemingly for the purpose of prescribing in what manner the probate judge, and the probate judge only, shall make deeds. It prescribes that the probate judge shall appoint commissioners. These commissioners are required to ascertain to whom deeds should be made; to levy taxes to pay expenses, and to report their proceedings to the *probate judge.* The probate judge then collects said taxes, pays said expenses, and

makes all the deeds which the commissioners report are to be made. The commissioners do not report to any other officer or person except the probate judge. No other person is authorized to collect said taxes; no other person is required to pay said expenses. No other person is authorized to make any of the deeds which the commissioners report should be made; and there is no provision of law requiring or even authorizing any of the proceedings of the probate judge or of said commissioners to be given to the mayor or other chief officer, or, indeed, to any officer of a town or city. Then how is the mayor or other chief officer to know what the probate judge or his commissioners have done? How is the mayor or other chief officer to know to whom the commissioners have reported that deeds should be made? No one claims that the probate judge has any right or authority to make deeds where the corporate authorities have entered the town site. Where the corporate authorities have entered the town site, it is agreed by all parties, that, under section 2 of said act, it devolves upon the mayor or other chief officer of the town or city to make the deeds. The probate judge makes the deeds only when he himself has entered the town site. Now, if the appointment of said commissioners was intended in any case to be for the benefit of the mayor or other chief officer; if the action or report of said commissioners was intended in any case to be a guide to the mayor or other chief officer, or to inform them to whom deeds should be made, would there not have been some provision of law prescribing some mode by which the mayor or other chief officer could know what the commissioners had done in any particular case? And why should § 9 provide as it does, that the probate judge in all cases "shall make deeds to the lots set apart [by the commissioners] to the various parties entitled to the same," who have paid their assessments, if the mayor or other chief officer should in any case make any of the deeds which the commissioners report should be made? And how is the mayor or other chief officer to know in any case who have paid their assessments, and who are therefore

entitled to receive their deeds? To say that the mayor or other chief officer should make any deed which the commissioners have reported should be made, would be to nullify and destroy a portion of said § 9. Must that be done? But why should it be necessary for the probate judge or his commissioners to instruct the "corporate authorities" of an incorporated town or city, to whom their mayor or other chief officer should make deeds? . Are not the corporate authorities, *the mayor and common council,* as competent to determine to whom deeds should be made, as the probate judge and his commissioners are? Cannot the mayor and common council of a town or city be trusted in such a case? Of course they might make mistakes, but so might the probate judge and his commissioners; and they would be no more likely to make mistakes than he or his commissioners would. But mistakes would not be fatal, by whomsoever they might be made. Mistakes could not destroy the rights of the occupants. Mistakes could not abrogate the right of an occupant to his property. But such mistakes might be corrected in any proper court of justice. Even if the deed should be made and delivered to the wrong person, such a mistake would not be final or conclusive; but it could be corrected in the proper courts.

If, however, we adopt the view of the defendant, then it may be answered, that § 4 provides in express terms that the probate judge shall, in every case, appoint commissioners, etc.; and there is no express provision to the contrary. "At any time," the statute reads, "after the entry of such town site, the probate judge of the county in which such town may be situated, may appoint three commissioners," etc. And there is no express provision anywhere to be found in the statutes limiting these general and comprehensive terms. Besides, if § 4 does not apply when the town site has been entered by the corporate authorities, then there is no provision prescribing to whom or in what manner the mayor or other chief officer shall make the deeds. Section 2 provides that whenever the town site shall be entered by the corporate au-

thorities, the mayor or other chief officer shall make the deeds; but neither that section nor any other section specifies in terms to whom he shall make the deeds, whether to residents or non-residents, to speculators or to some other class or kind of persons. If § 4 and the following sections do not apply where the corporate authorities have entered the town site, then how is the mayor or other chief officer to know to whom to make the deeds? And how are all the expenses to be paid? May the mayor or other chief officer determine arbitrarily to whom the deeds shall be made? The commissioners to be appointed under § 4, are to be appointed by the probate judge, who may himself be a nonresident of the town, and entirely disinterested as to the property therein, and the commissioners *must be,* under the statute, non-residents of the town and entirely disinterested therein. Then may the mayor or other chief officer, who is necessarily a resident of the town, and who may be greatly interested therein, execute deeds arbitrarily to whomsoever he may fancy are entitled to them? If § 4 and subsequent sections are no guide to him, then he has no guide, or at least none provided for in express terms. It is true that, under the act of congress, the land must be entered "in trust for the use and benefit of the several occupants thereof." But still, if said § 4 and the following sections have no application where the land is entered by the corporate authorities, then the mayor or other chief officer has no way prescribed by statute, by which he can ascertain who are the occupants, and who are entitled to deeds. We would think, however, that whatever the law may be, if any mistake should occur in making deeds, the mistake could be rectified by proper action in the proper court. No mistake of the mayor or of any other officer could defeat the right of an occupant to procure a good title to his land. But the law should not be so construed as to place arbitrary power in the hands of an interested person, and thereby encourage mistakes if the law can reasonably be construed in any other way.

It will be seen from the foregoing that at least a plausible

argument may be made on either side of the question. We have endeavored to give the arguments on both sides, and we are inclined to think that the argument of the defendant is the stronger, and therefore we are inclined to think that the probate judge has no power to appoint commissioners where the town site has been entered by the corporate authorities. He can appoint commissioners only where he himself has made the entry. Whether, when the corporate authorities have entered the town site, there is a *casus omissus* in the law with respect to the mode of division of the town site among the several occupants, or whether the "corporate authorities," the mayor and council, the legislative branch of the town or city government, may, by ordinance or otherwise, provide some proper mode for a proper division of the town site, it is entirely unnecessary for us to determine. When the "corporate authorities" have entered the town site, the legal title is, of course, in them. Now can they not under their general power to pass ordinances, etc., prescribe some fair and equitable mode by which their "mayor or other chief officer" can transfer the legal title vested in them (the corporate authorities) to the various equitable owners of the several portions of the town site? It would seem that the "corporate authorities" ought to be able under their general powers to dispose of this property according to law, the same as they would be to dispose of any other property that might be vested in them for any particular purpose.

We are not aware that any probate judge has ever appointed commissioners to divide a town site, or to determine to whom deeds should be made, where the corporate authorities have entered the town site. It would seem from the record in the case of *Emmert v. DeLong,* reported in 12 Kas. 67, that the mayor himself, in that case, made the division and determined to whom the deeds should be made. And in the case of *Clayton v. School District,* 20 Kas. 256, it would seem from the record that the mayor appointed commissioners to make such division, etc., just as the probate judge would where the probate judge has entered the town site.

Judgment in this case will be rendered in favor of the defendant, and against the plaintiffs.

All the Justices concurring.